UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD DAVIS #223815,

    Plaintiff,                                  Hon. Janet T. Neff

v.                                                    Case No. 1:15-cv-19

DANIEL HEYNS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 50). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this action **terminated**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint and exhibits thereto. (ECF No. 1). Plaintiff is an adherent of the Islamic faith whose beliefs compel him to eat only Halal food. On July 16, 2013, the Michigan Department of Corrections (MDOC) adopted Policy Directive 05.03.150 pursuant to which the MDOC "offers a vegan menu to meet the religious dietary needs of prisoners." Michigan Department of Corrections, Policy Directive 05.03.150, ¶ OO. The Policy further provides that "[a] prisoner who believes the Vegan menu does not meet his/her religious dietary needs may request an alternative menu." *Id.*

On September 14, 2013, Plaintiff requested to participate in the vegan meal line. Plaintiff's request was granted, but Plaintiff thereafter determined that the vegan meal offerings did not

satisfy his own personal religious dietary preferences. Specifically, Plaintiff was being denied "dairy, fish, poultry, and meat products" which Allah "has commanded him to eat." Plaintiff asserts that the "the only way that a diet can be truly considered a religiously Halal Islamic diet is that it must reflect all of the eating habits of the Prophet Muhammad."

On May 19, 2014, Plaintiff submitted a formal request to be provided an alternative religious menu containing meat. Plaintiff's request was denied prompting the present action. Plaintiff alleges that the failure by prison officials to accede to his dietary requests violates the Religious Land Use and Institutionalized Persons Act (RLUIPA), First Amendment, and his right to equal protection under the law. Plaintiff further alleges that his rights under the Michigan Constitution have been violated. Many of Plaintiff's claims were dismissed on screening. The remaining defendants now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence

satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.      RLUIPA**

In relevant part, RLUIPA prohibits the government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). RLUIPA does not define the phrase "substantial burden." While the Supreme Court has not defined the phrase "substantial burden," it has observed that forcing a prisoner to choose between punishment and violating his religious beliefs constitutes a substantial burden. *See Holt v. Hobbs*, 135 S.Ct. 853, 862 (2015). Lower federal courts have determined that an action constitutes a substantial burden when it "force[s] an individual to choose between 'following the precepts of her religion and forfeiting benefits' or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Shabazz v. Schofield*, 2016 WL 4126649 at *7 (W.D. Tenn., Aug. 2, 2016) (citations omitted); *see also*, *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015) (same).

On the other hand, action which merely "encumbered the practice of religion, [but] did not pressure the individual to violate his or her religious beliefs" does not constitute a substantial burden. *Shabazz*, 2016 WL 4126649 at *7; *see also*, *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only

"exceptional" burdens on religious exercise); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial").

Plaintiff bears the initial burden to establish that his ability to exercise his religion has been substantially burdened. *See Ali v. Quarterman*, 434 Fed. Appx. 322, 325 (5th Cir., July 18, 2011); *Hall v. Martin*, 2012 WL 1579334 at *7 (W.D. Mich., Mar. 29, 2012). If Plaintiff makes the requisite showing, the burden shifts to Defendants to demonstrate that their action constituted the least restrictive means of furthering a compelling governmental interest. *See Ali*, 434 Fed. Appx. at 325; *Hall*, 2012 WL 1579334 at *7.

It is important to note that Plaintiff has not alleged that he is being denied a Halal diet. Instead, Plaintiff initiated the present action simply because he is not being provided a Halal diet containing the specific menu items of his choosing. This does not constitute a substantial burden. *See, e.g., Johnson v. Pritchard*, 2015 WL 6455328 at *3 (M.D. Tenn., Oct. 26, 2015) (while RLUIPA may require that Muslim prisoners receive Halal meals, it does not require that such meals contain the specific menu items desired by the prisoner); *Robinson v. Jackson* 615 Fed. Appx. 310, 313 (6th Cir., June 15, 2015) ("[w]e have explicitly held that vegetarian meals are, in fact, Halal"). Moreover, even if the Court assumes that Plaintiff could establish that he suffered a substantial burden, Defendants would still be entitled to summary judgment because the decision by the MDOC to accommodate the religious dietary needs of thousands of prisoners by providing a vegan menu option satisfies RLUIPA. *See, e.g., McCombs v. Parker*, 2016 WL 1122677 at *2 (W.D.N.C., Mar. 22, 2016) ("prisons have a compelling and legitimate interest in the orderly administration of a food service program that

accommodates the religious dietary needs of thousands of prisoners"). Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to Plaintiff's RLUIPA claims.

## II.      First Amendment

As the Supreme Court has observed, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Thus, while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates nevertheless retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). However, "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations," *Wolfish*, 441 U.S. at 545, as operating a prison is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.

Accordingly, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues

involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting *Shabazz*, 482 U.S. at 349). The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

> 1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2. whether there are alternative means of exercising the right that remain open to prison inmates;
>
> 3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>
> 4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a

legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484.

With respect to which party bears the burden concerning the *Turner* analysis, the Supreme Court has held that "[t]he burden. . .is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). This statement clearly places on the prisoner the burden as to the last three *Turner* factors, but says nothing as to which party bears the burden as to the initial factor. As subsequent courts have concluded, the burden to articulate the rationale for a challenged action must rest with prison officials. As the Sixth Circuit observed:

> We note that while the burden is on the prisoner to disprove the validity of the regulation at issue. . .Defendants must still articulate their interest in the regulation. . .Otherwise, a prisoner would be forced to hypothesize any number of potential legitimate penological interests and then disprove a reasonable relationship between each and the regulation at issue.

*Figel v. Overton*, 121 Fed. Appx. 642, 646 n.2 (6th Cir., Feb. 4, 2005) (internal citations omitted); *see also*, *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012) ("the prison has the burden of demonstrating the First *Turner* Factor").

The Court is persuaded by this reasoning and concludes, therefore, that with respect to the *Turner* factors, Defendants bear the initial burden to articulate a valid, rational connection between the challenged action and the legitimate governmental interest which motivated such. This particular

burden is "slight, and in certain instances, the connection may be a matter of common sense." *Johnson*, 669 F.3d at 156.

It is well recognized that prison officials have a legitimate penological interest in controlling the cost of special religious diets. *See, e.g., Green v. Tudor*, 685 F.Supp.2d 678, 698 (W.D. Mich. 2010) (recognizing that the State of Michigan "expends significant financial and administrative resources" providing prisoners with religious diets that are "expensive, diverting resources from other penological goals"); *see also*, *Berryman v. Granholm*, 343 Fed. Appx. 1, 6 (6th Cir., Aug. 12, 2009) (prison officials have a legitimate penological interest in controlling the cost of special religious diets). It is eminently reasonable for prison officials to accommodate the religious dietary needs of thousands of prisoners by providing a single vegan menu option. Thus, the Court finds that there exists a valid penological reason for prison officials to decline Plaintiff's request to be served a menu consisting of only those items requested or approved by Plaintiff.

As for the other factors, such weigh in Defendants' favor. The vegan menu option, from which Plaintiff has been approved to eat, satisfies the requirement that Plaintiff eat Halal. Moreover, as already noted, acceding to Plaintiff's individualized dietary requests would negatively impact prison resources. Moreover, affording Plaintiff an individualized diet could engender resentment among other prisoners who are not afforded such an individualized diet and, therefore, implicate legitimate security concerns. Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to Plaintiff's First Amendment claims.

**III.**         **Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To prevail on an equal protection claim, Plaintiff must demonstrate that the government treated him "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). Plaintiff can also prevail by demonstrating that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Davis v. Prison Health Services*, 679 F.3d 433, 441 (6th Cir. 2012). The Equal Protection Clause, however, prohibits only intentional discrimination. *See, e.g., Ryan v. City of Detroit*, - - - F.Supp.3d - - -, 2016 WL 1238780 at *4 (E.D. Mich., Mar. 30, 2016) ("[t]he Equal Protection Clause prohibits only intentional discrimination") (citing *Washington v. Davis*, 426 U.S. 229, 239 (1976)); *United States v. Blewett*, 746 F.3d 647, 658 (6th Cir. 2013) (same).

The basis for Plaintiff's equal protection claim is his belief that the aforementioned vegan menu option, implemented by the MDOC in an attempt to accommodate the religious dietary needs of thousands of prisoners in an easily manageable and cost-effective manner, is, in fact, a Buddhist menu. Plaintiff alleges that by denying his request for a special religious diet "the defendants are coercing/proselytiz[ing] the plaintiff to practice the Buddhist worship/belief system causing the plaintiff to be rebellious against" his faith's commandment that he eat meat.

Plaintiff's equal protection claim fails because he has presented no evidence from which a reasonable juror could conclude that Defendants intentionally discriminated against Plaintiff. To the

extent Plaintiff's claim implicates the implementation of the vegan meal option, Plaintiff cannot establish that such was undertaken for discriminatory or otherwise improper reasons. In fact, the implementation of the vegan meal option demonstrates just the opposite. *See, e.g., Stornello v. Heyns*, 2013 WL 6842561 at *5 (E.D. Mich., Dec. 27, 2013) (implementation by the MDOC of a vegan menu option which "complies with Kosher and Halal religious tenets. . .suggests an intent to accommodate Plaintiffs' religious beliefs, not to discriminate against Plaintiffs on the basis of religion or to impose a substantial burden on their religious beliefs"). To the extent Plaintiff's claim implicates the decision by prison officials to deny his request for a particularized religious menu, Plaintiff has presented no evidence that any similarly situated prisoner has requested and obtained a religious diet substantially similar to that requested by Plaintiff. Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to Plaintiff's equal protection claims.

**IV.       State Law Claims**

Plaintiff has also asserted various state law claims against the remaining Defendants. Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction." Indeed, "if the federal claims are dismissed before trial. . .the state claims should be dismissed as well." *Taylor v. First of America Bank - Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also*, *Bah v. Attorney General of the State of Tennessee*, 610 Fed. Appx. 547, 555 (6th Cir., May 8, 2015) (same). Accordingly, the undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's remaining state law claims and instead dismiss such without prejudice so that Plaintiff may pursue such in the appropriate state forum.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (ECF No. 50), be **granted**. The undersigned further recommends that Plaintiff's remaining state law claims be **dismissed without prejudice** and this action **terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                  Respectfully submitted,

Date:  November 1, 2016                            /s/ Ellen S. Carmody
                                                                               ELLEN S. CARMODY
                                                                               United States Magistrate Judge